No. 1-13-00994-CR

Court of CRIMINAL
APPEALs

No. 1373686
In The 176th District Court of HARRIS County, Texas

Authony Sorel Haywood
Appellant
V.S
The State of Texas
APPEllEE

PRO. SE Amendment

PRO SE Authony S. Haywood
S.P.N 01867799
1200 BAKER St. 5-D-1B
Houston, TX 77002

RECEIVED IN
COURT OF CRIMINAL APPEALS

JAN 07 2015

Abel Acosta, Clerk

## Statement Regarding Oral Argument

Oral argument is not requested by Appellant

## Identification of the Parties

Appellant give Notice, pursuant to Tex. R. App. P. 38.1 that the following are interested parties in the present Appeal:

### Counsel for the State:

Devon Anderson, District Attorney of Harris County.

Kyle Watkins, Assistant District Attorney at Trial.

hert Fuller, Assistant Attorney at Trial.

Alan Curry, Assistant District Attorney on Appeal.

### Appellant

Anthony Sorel Haywood.

### Counsel for Appellant:

Scott Pope, Attorney at Trial.

Thomas S. Lewis, Attorney on Appeal.

Pro se Anthony Sorel Haywood.

### Trial Judge:

Hon. Stacey Bond.

# Table of Contents

Statement Regarding Oral Argument

Identification of the parties

Index of Authorities

Statement of the Case ......1

Statement of facts ......2

Issues presented ......3

Summary of the Argument:

First Issue: Opening the door to Appellant's Custodial

Statement ......4

Second Issue: Denial of Challenge for Cause ......4

Argument:

First Issue: Opening the door to Appellant's Custodial

Statement ......5

A. Admission of Statement and Review Standard ......5

B. Was admission of the Statement an abuse of Discretion ......6

C. Admission of the Statement caused harm to Appellant ......8

Second Issue: Denial of Challenges for Cause ......9

A. Denial of Challenges and Review Standard ......9

B. Harm from denial of Challenges ......11

Prayer for Relief ......12

Certificate of Service ......13

Certificate of word Count ......14

# Index of Authorities

## Cases

Cameron V. State, 241 S.W. 3d 15 (TEX. Crim. App. 2007).5

Chambers V. State, 866 S.W. 2d 9 (TEX. Crim. App. 1993)...... 12

Credille V. State, 925 S.W. 2d 112 (TEX. App - Houston [14th Dist.] 1996, pet. Ref'd)...... 6

Daggett V. State, 187 S.W. 3d 444 (TEX. Crim. App. 2005)...... 6

Davis V. State, 329 S.W. 3d 798 (TEX. Crim. App. 2010), cert. denied, 132 S. Ct. 128 (2011)...... 10

Feldman V. State, 71 S.W. 3d 738 (TEX. Crim. App. 2002)..... 11

Fuentes V. State, 991 S.W. 2d 267 (TEX Crim. App 1999...... 6

Gardner V. State, 306 S.W. 3d 247 (TEX Crim. App . 2009)....12

Green V. State, 934 S.W. 2d 92 (TEX. Crim. App. 1996)..... 11

Herrera V. State, 241 S.W3d 520 (TEX Crim. App 2007)..... 7

Kipp V. State, 876 S.W. 2d 330 (TEX. Crim. App. 1995)....7

King V. State, 29 S.W. 3d 556 (TEX. Crim. App. 2000)...... 11

Mirauch V. Arizona, 516 U.S. 1051, 116 S. Ct. 717, 133 L Ed. 2d 270 (1996)...... 4, 7, 8

McCarthy V. State, 65 S.W. 3d 47 (TEX. Crim. App. 2001). 8, 9

Nickerson V. State, 312 S.W. 3d 250 (TEX. App - Houston [14th Dist pet. Ref'd...... 7

Parr V. State, 557 S.W. 2d 99 (TEX. Crim. App. 1997)..... 6

Saureda V. State, 129 S.W. 3d 116 (TEX. Crim App 2004)..... 5

Satterwhite V. State, 486 US 249, 108 S. Ct. 1792, 100 L. Ed 2d 284 (1988)..... 8

Tovar V. State, 221 S.W. 3d 185 (TEX. App - Houston [1st Dist.] 2006, pet. Ref'd...... 6

Webb V. State, 991 S.W. 2d 408 (TEX. App - Houston [14th Dist] 1999 pet. ref'd..... 5

Wilson v. State, 311 S.W.3d 452 (Tex. Crim. App. 2010 ..... 8

Statutes
Tex. Code Crim. Proc.:
Art. 38.27 ...... 4, 7, 8
Art. 35.16 ....... 10
Art. 35.16 ....... 11

Rules
Tex. R. App. P.:
Rule 25.2 ....... 1
Rule 38.1 ....... i
Rule 44.2 (a) ....... 8

Tex. R. Evid.:
Rule 107 ...... 6
Rule 404 ...... 6
Rule 405 ...... 6

To the Honorable Court of Appeals:

Comes Now Anthony Sorel Haywood, Appellant, and submit this Brief pursuant to Rule 25.2 of the Texas Rule of Appellate Procedure in support of his request to set aside the conviction in Cause No. 1373686 and for a new trial therein.

## Statement of the Case

Appellant was charged by indictment in Cause No. 1373686 with aggravated assault of Chris Charles by threatening him with imminent bodily harm by using and exhibiting a firearm. (Clerk's Record, 10). The indictment included an enhancement paragraph alleging a prior felony conviction. (Id). Appellant entered a plea of not guilty and a jury was empanelled. (Reporter's Record, IV, 5). The court declared a mistrial when a juror became incapacitated. (Reporters Record, II, 96). A second jury returned a verdict of guilty of the lesser included offense of deadly conduct by discharge of a firearm. (Clerk's Record, 124). The court found the enhancement paragraph to be true and sentenced Appellant to a term of 6 year's imprisonment. (Id). Appellant gave timely notice of appeal and the court appointed the under-signed as Attorney on appeal. (Id, 128, 131). The Certified Appellant's right to appeal. (Id, 130).

## Statement of Facts

On the evening of January 11, 2013, Houston police Fuhlbrigge received a call to investigate a shooting. He met with the complaining witnesses who flagged him down at a parking lot. (Reporter's Record, IV, 12-14). Fuhlbrigge placed the complainant, identified as Chris Charles, in his cruiser after searching him and finding no weapon. (Id., 19). Charles directed Fuhlbrigge to the Coventry Square Apartments where the shooting had taken place. (Id., 15). Fuhlbrigge went to the apartment indicated by Charles and the door was was opened by an unknown female. Appellant could be seen inside the apartment and identified himself. Appellant could be seen once again in the apartment and identified himself to the officer. (Id., 16).

Fuhlbrigge detained Appellant. While in custody, Appellant said "I gave the gun to somebody else." (Id., 18). Appellant said he got into an argument with Charles. As Charles was leaving, Appellant felt threatened. Appellant went back inside, got a gun, and fired in the direction of Charles. (Id., 19).

The bullet struck the car occupied by Charles, his girlfriend Lataya Simmons, and her 6-year-old son, causing damage to the window and door frame. (Id., 29, 32.

Fuhlbrigge arrested Appellant for assault. (Id., 32). There was little further investigation. No bullets or casings were recovered, no ballistics tests were performed, and Appellant's hands were not bagged for gunshot residue. (Id., 34-37). According to Fuhlbrigge, no tests were done because Appellant admitted shooting at Charles. (Id., 43). No warrant was sought for the gun because Appellant admitted disposing of it. Chris Charles took the stand and admitted that he was a parolee with two prior felony conviction. (Id., 52-53). He had known Appellant for eight years. Charles had arranged to meet Appellant that night to buy marijuana for his girlfriend's aunt. (Id., 54-55). Charles arrived at the scene, leaving his girlfriend Lataya Simmons and her 6-year-old son in the car while he met Appellant at the door of his apartment (Id., 59). Charles got into an argument with Appellant over the amount and price of the marijuana; He called his girlfriend on her cell phone and they agreed not to buy it. (Id., 60-61). Tempers flared and Charles banged the door on the way out of Appellant's apartment. As Charles walked to the car, Appellant's followed. (Id., 62-64). Charles got in the car and told his girlfriend to back up. As she hit the gas, Appellant fired a shot. (Id., 68-70). They got away, and flagged down the police after noticing a bullet hole in the windshield. (Id. 71-74). Lataya Simmons described how she and Charles planned to buy marijuana for her aunt.

She drove Charles to Appellant's Apartment, with her son seated in back. (Id, 89-92). After the drug deal went bad, she saw Appellant approaching the car but she couldn't hear what he was saying. As she was backing up the car she heard Charles urging her to hurry. (Id., 95-98). She heard a gunshot but didn't see a flash. (Id., 99-100). She couldn't see if Appellant had anything in his hand, but she and Charles called Appellant's cell phone and heard him say he fired in the air. (Id., 100, 107).

## Issues Presented

First Issue: Opening the door to Appellant's Custodial Statement

Second Issue: Denial of Challenges for Cause

## Summary of the Argument

First Issue: Opening the door to Appellant's Custodial Statement

Appellant stated to a police officer that he had disposed of the gun that he fired at the complainants. The Court granted Appellant's motion to suppress the statement as the result of custodial interrogation that did not comply with the required of Miranda v. Arizona and Art. 38.27, Tex. Code Crim. Proc. The court later ruled the Appellant's cross-examination of the officer had opened the door to the custodial statement.

The Court Had already ruled the statement inadmissible on Constitutional and Statutory grounds. Opening the door could cure the Constitutional and Statutory Violations that made the statement inadmissible. Appellant suffered harm from Admission of the statement. The testimony of the Complainants made them less than fully credible, and Admission of Appellant's statement may well have helped resolve any doubts the jury held as to his guilt.

### Second Issue: Denial of Appellant's Strikes for Cause:

In response to appellant's voir dire question, Certain venirepersons gave answers indicating they could Not afford him the presumption of innocence. Seven of those venirepersons were seated on the jury over Appellant's Objection. Appellant preserved error by requesting Additional strikes and indicating which objectionable jurors were seated.

## Argument

### First Issue: Opening the door to Appellant's Custodial Statement

**A) Admission of statement and review Standard.**

Appellant moved to suppress his statement to Officer Fuhlbrigge that he gid of the gun that he fired after arguing with Charles. (Reporter Record, IV, 16-27). The court ruled that the statement was inadmissible product of Custodial interrogation. (Id., 27).

Appelland then asked Fuhlbrigge why he had not sought a search warrant for the gun, not bagged Appellant's hands for gunshot residue, and not performed ballistics test. (Id. 34-38). The prosecutor then asked for a ruling that Appellant's line of questioning had opened the door to Appellant's statement. (Id., 39-40). The Court agreed the door had been opened and found the statement admissible. (Id., 41). Over Appellant's objection, the prosecutor elicited testimony from Fuhlbrigge that he had not searched for the gun or tested for residue because Appellant had admitted he got rid of the gun that he fired at Charles. (Id., 42-44).

The review standard for evidentiary ruling is abuse of discretion. Sauceda v. State, 129 S.W. 3d 116, 120 (Tex. Crim App. 2004). The trial court's ruling will be upheld unless it falls outside the zone in which reasonable minds can disagree. Cameron v. State, 241 S.W. 3d 15, 19 (Tex. Crim. App. 2007). If the court's evidentiary ruling falls outside the zone of reasonable disagreement, it amounts to an abuse of discretion. Webb v. State, 991 S.W. 2d 408, 418 (Tex. App.-Houston [14th Dist] 1999, pet. ref'd).

Ordinarily, the court's ruling that the door had been opened would lie well within the zone in which reasonable minds may disagree. It is well established that if defense counsel pursues a subject that the prosecutor would ordinarily not be able to develop, and so creates a false impression, the door is opened for the state to reply.

Parr v. State, 557 S.w.2d 99, 102 (Tex.Crim.App. 1977); Credille v. State, 925 S.w.2d 112, 116 (Tex.App. Houston [14th Dist.] 1996, pet.ref'd). If the defendant creates a false impression, He may open the door to Admission of extraneous offenses, Daggett v. State, 187 S.W.3d 444, 452 (Tex.Crim.App. 2005), or acts, conversation, declaration, or statements when the opposing party has offered selected portions out of context. Tovar v. State, 221 S.W.3d 185, 190 (Tex.App.-Houston[1st Dist.] 2006, pet.ref'd) This is logically related to rule 107, Tex.R.Evid., which allows a party to rebut a false impression made by the opposing party's use of act or statements taken out of context. Accordingly, Rule 107 Has been recognized as encompassing the "Open the door" Situation. Fuentes V. State, 991 S.w.2d 267, 279 (Tex.Crim. App. 1999).

B. Was admission of the Statement an Abuse of Discretion?

As usually Applied, Opening the door allows admission of material that is in itself Not specifically inadmissible under evidentiary rules. For example, the door may be opened to prior Conviction or extraneous offenses under rules 404 and 405, Tex.R.Evid, or to redacted portions of documents or recording under Rule 107. However, opening the door does Not grant free rein to introduce otherwise inadmissible material. Kipp V. State, 876 S.W. 2d 330, 337 (Tex.Crim.App.1995). It is error to use "Opening the Door" to admit evidence that is inadmissible in its own right. Id. at 338.

Appellant's statements was inadmissible in it own right. To be admissible, statements made by a person in custody must comply with the requirements of Art. 38.27, Tex. Code Crim. Proc. Nickerson V. State, 312 S.W. 3d 250, 255 (Tex. App-Houston [14th Dist.] 2010, pet. ref'd). A custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom in any significant way. Miranda V. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966). In the present case, the court had already ruled that Appellant's statement to Fuhlbrigge was inadmissible as the result of custodial interrogation in which Miranda and 38.27 requirement had not been met. (Reporter's Record, tV, 27). The trial court's ruling on custodial interrogation is a mixed question of law and fact and will be given almost total deference when the question of fact turns on witness credibility. Herrera V. State, 241 S.W.3d 520, 527 (Tex. Crim. App. 2007). By questioning Fuhlbrigge why he did not search for the gun, bag Appellant's hand, or perform ballistics tests, Appellant arguably opened the door to acts or conversation by Appellant that would correct any false impression created by the line of questioning, as long as the act or conversation were not in themselves inadmissible. Such was not the case with a statement that had already been excluded as a violation of Appellant's rights under Miranda and Art. 38.27. To admit evidence obtained in violation of the law amounts to an abuse

of discretion. Wilson V. State, 311 S.W. 3d 452, 458 (Tex. Crim. App. 2010) Hence the admission of Appellant's Statement after a finding that it was the fruit of a Constitution Violation lay outside the zone of reasonable disagreement.

C.) Admission of the statement caused Harm to Appellant

Where a trial court's ruling involves Constitution error, the judgment must be reversed unless the record shows beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2 (A); McCarthy V. State, 65 S.W. 3d 47, 52 (Tex. Crim. App. 2001) The harm analysis does Not turn Solely on whether there was Sufficient evidence independent of the defendant's Statement for a reasonable jury to reach a verdict. Satterwhite V. Texas, 486 U.S. 249, 258-59, 108 S. Ct. 1792, 100 L. Ed. 2d. 284 (1988); McCarthy, 65 S.W. 3d 55) If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is Not harmless beyond a reasonable doubt. Satterwhite, 486 U.S. 256-57 McCarthy, 65 S.W. 3d 58). Applying this test to the Present case, the testimony of Charles and Simmons without Appellant's Statement was arguably Sufficient to support the jury's decision to Convict Appellant of deadly Conduct. However, a defendant's own Statement is the "most probative and damaging evidence that can be admitted."

Page 8

McCarthy, 65 S.W.3d at 56. Statements admitting guilt "have profound impact on the jury, such that we may justifiably doubt its ability to put them out of mind even if told to do so." Id. Appellant's admission that he fired the gun may have had an especially persuasive effect on the jury because the complainants Charles and Simmons made such a poor case for themselves. Not only did Charles have a significant criminal history, but he and Simmons were unashamed participating in a drug deal. They also made no apologies for bringing a 6-year-old child to the drug deal along with them. (Reporter's Record, IV, 52-59, 89-92). These facts must have raised doubts about Charles' and Simmons' veracity which Appellant's statement should have helped to resolve. Since it cannot be said that the admission of Appellant's statement did not contribute to the guilty verdict, his conviction should be reversed. McCarthy, 65 S.W.3d at 56.

Second Issue: Denial of Challenges for cause
   A. Denial of Challenges and Review Standard
During voir dire, Appellant asked the panel if anyone thought he might be guilty, using a scale of zero to ten, with zero representing a presumption of guilty:

IF I give you a range of zero to ten, zero being i presume him to be very guilty, right. So that's the range. Zero i presume him to be innocent; ten, my ability to presume his innocence is not good because i think he very guilty, right, just as he sits here today.... So, again, the presumption of innocence is zero, and in order to be on the jury, it's my contention you need to say zero, right? But i want you to say whatever number you think. (Reporter's Record, III, 83).

The following venirepersons answered with numbers greater than zero: Juror No. 1 Catherine Morgan, "1"; Juror No. 5, Ponciano Infante, "2" (Id., 84); Juror No. 24, Ana Baez, "3", Juror No. 25, Mervin Machuca, "4" (Id., 85); Juror No. 30, Ana Devera, "2" (Id., 86); Juror No. 38, Laura Wren, "5", and Juror No. 40, Laura Hinze, "2" (Id., 87). Appellant move to strike these jurors for failure to afford him the presumption of innocence. (Id, 97). The Court denied the strikes for cause. (Id, 100). Appellant the requested additional peremptory strikes, which were denied (Id, 101). All the venirepersons objected to. above were seated on the jury. (Id, 101-102).

A defendant may challenge any aspect of the applicable law. TEX. Code Crim. Proc. Art. 35.16. Rulings on challenges for cause may be reversed only for an abuse of discretion. Davis V. State, 329 S.W 3d 798, 807 (Tex. Crim. App 2010), cert. denied, 132

S. Ct. 128 (2011).

To preserve error for denial of a challenge for cause, a defendant must show that he

1) Asserted a clear and specific challenge for cause;

2) Used Peremptory challenges were exhausted;

3) Used a peremptory challenges for the challenged venireperson;

4) His request for Additional Strikes was denied; and

5) an objectional juror was seated on the jury. Green v. State 934 S.W. 2d 92, 105 (Tex. Crim App. 1996)

The record cited above shows that Appellant preserved error by meeting all the requirement set forth in Green. The venireperson objected to by Appellant all indicated by their answers greater than zero that they could not afford Appellant the presumption of innocence. A trial Court's ruling is entitled to deference when the challenged juror's answer are vacillating or unclear. King v. State 129 S.W. 3d 556, 568 (Tex. Crim. App. 2000). Any in the present case, However, the jurors answers made it graphically clear that they could not presume Appellant to be innocent.

Appellant may properly challenge any prospective juror who has a bias or prejudice against the law. Art. 35.16 (c) (2), Tex. Code. Crim. Proc.; Feldman v. State, 71 S.W. 3d 738, 744 (Tex. Crim. App. 2002).

Any juror who would place the burden of proof on the defense is challengeable for cause. (Id 745). To seat juror who clearly stated they inability to follow the law would lie outside the zone of reasonable disagreement and hence amount to an abuse of discretion.

B. Harm from Denial of Strikes for Cause

To demonstrate harm, a defendant must show that Court erroneously denied one strike for cause and he suffered a detriment as a result. Chambers v. State, 866 S.W. 2d 9, 23 (Tex. Crim App. 1993). The test of the court's ruling is whether a bias or prejudice against the defendant or the law would significantly impair the jurors ability to follow his or her oath and the Court's instructions on the law. Gardner v. State, 306 S.W. 3d 274, 295 (Tex. Crim. App. 2009).

In the present case, the court denied 7 strikes of Venireperson whose answers indicated they could not afford Appellant the presumption of innocence. All 7 of these Venireperson were seated on the jury. As a result, a majority of the jury had expressed a bias against the law sufficient to impair there ability to follow the Court's instructions on the presumption of innocence. In particular, Juror No. 25, Mervin Machuca, answered Appellant's scale question with "4" (Reporter's Record, IV.85) and Juror No. 38, Laura Wren, Answer "5". (Id., 87).

Applying Appellant's Scale of "zero" as "presumed Innocent" and "ten" as "presumably guilty", the answer of these jurors placed them well on the way to denying Appellant his right to the presumption of innocence. Applying the test set forth in Gardner, Appellant was clearly harmed by the court's denial of his strikes for cause.

## PRAYER FOR Relief

Wherefore, premises considered, Appellant prays this court to consider each and every point of error raised herein, to reverse Appellant's conviction and remand for a new trial, or fashion a remedy consistant with justice and the law.

Respectfully Submitted,

Pro se Anthony S. Hayward

SPN# 01867799

1200 Baker St. 5-D-1B

Houston, TX 77002

Certificate of Service

I, the undersigned Appellante, hereby certify that a true copy of the foregoing Appellant brief was served on this the 31st day of Dec. 2014 on Alan Curry, State's Appellate Counsel By US mail.

Page 13

Anthony S. Haywood